CORNELL M. JONES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 36601-86
United States Tax Court
T.C. Memo 1988-373; 1988 Tax Ct. Memo LEXIS 401; 55 T.C.M. (CCH) 1556; T.C.M. (RIA) 88373; August 15, 1988
Cornell M. Jones, pro se. Dianne Crosby, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency in petitioner's 1985 Federal income tax of $ 16,490,402 and additions to tax as follows: pursuant to section 6651(a)(1), $ 1,649,040; [1]section 6653(a)(1), $ 824,520; section 6654, $ 2,507; [2] and section 6661, $ 1,649,040. Respondent determined the addition to tax pursuant to section 6651(a)(1) in his statutory notice as 10 percent of the deficiency because at the time the notice was issued petitioner's return was two months late. In his first amendment to answer filed September 30, 1987, respondent increased the addition to 25 percent of the deficiency. *402 In this first amendment respondent also increased the section 6661 addition to tax from 10 percent to 25 percent of the underpayment of tax attributable to petitioner's understatement of income because the Omnibus Reconciliation Act of 1986 increased the rate at which the addition to tax was imposed for additions assessed after October 21, 1986. In his second amendment to his answer, respondent alleged that petitioner was liable for an addition to tax pursuant to section 6653(a)(2) on an underpayment in the amount of the deficiency. The issues we must decide are (1) whether petitioner had unreported income of $ 33,000,000 in 1985 from the illegal sale of cocaine and (2) whether petitioner is liable for the additions to tax determined by respondent. FINDINGS OF FACT At the time petitioner filed the petition in this case he was a resident of the Federal penitentiary in Leavenworth, Kansas. Petitioner filed a Federal income tax return for 1984, but he did not file a Federal income tax return for 1985. On October 29, 1985, petitioner was arrested by the Washington, D.C. Metropolitan Police Department ("D.C. Police") after having purchased from an undercover police officer a kilogram *403 of a substance petitioner believed to be cocaine that he could dilute for distribution to street dealers. As a result, petitioner pled guilty to conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (1982). Petitioner was sentenced to a prison term of 9 to 27 years, which he is serving at the Federal penitentiary in Leavenworth, Kansas. Petitioner's arrest and conviction resulted from a long-term investigation by the D.C. Police of large scale drug trafficking taking place at a small area known as Hanover Place in the District of Columbia. Based upon long-term surveillance and searches of persons arrested in Hanover Place, the D.C. Police estimated that during 1985 approximately one kilogram of cocaine for each eight-hour shift was sold at Hanover Place. Petitioner's operatives sold cocaine around the clock in three shifts per day, selling approximately 21 kilos per week at Hanover Place. Persons arrested during 1984 and 1985 identified petitioner as the "kingpin" of Hanover Place. The D.C. Police investigated petitioner's involvement in the illegal drug sales at Hanover Place in part through an undercover operation. Two members of the D. C. *404 Police posed as South American importers of large quantities of cocaine. Detective Jesus Gonzales ("Gonzales"), the principal undercover operative, made contact with petitioner through one of petitioner's acquaintances, Alvin Bailey ("Bailey") and set up a meeting with petitioner. On October 29, 1985, Bailey and petitioner met Gonzales and another undercover operative in a hotel room in Washington, D.C. where they negotiated a deal. At this meeting petitioner represented to Gonzales that he could sell 20 kilos of cocaine per week. In the room during these discussions was a package which was represented by the undercover officers to be a kilo of cocaine but was in fact a sham. The substance looked, tasted and felt like cocaine but was actually harmless. Petitioner agreed to buy the package for $ 30,000 cash which he produced and gave to the undercover officers. The D.C. Police arrested petitioner and Bailey leaving the hotel room with the sham cocaine package. After the arrest on October 29, 1985, the D.C. Police obtained search warrants for petitioner's residence, two safety deposit boxes (one in petitioner's name and one in the name of Rose Jones, petitioner's mother), and for *405 an apartment in Silver Spring, Maryland. The search of petitioner's residence produced, among other things, a small quantity of cocaine, five handguns, $ 870,000 in cash, a narcotics identification kit, a debugging device, a bill counting machine, communications equipment, two safety deposit box keys, two Mercedes Benz automobiles, jewelry, furs, a copy of a search warrant executed at a house on Hanover Place at which quantities of cocaine and related paraphernalia were seized by the D.C. Police, 28 airline tickets from Washington, D.C. to Las Vegas and tickets to see a championship fight there, and petitioner's personal papers. A search of the safety deposit box in petitioner's name yielded $ 57,600 in cash and three gold ingots, while the safety deposit box under the name of petitioner's mother yielded $ 586,300 in cash. The search of the Silver Spring apartment yielded 10.5 kilos of cocaine, $ 4,000 in cash, photos of petitioner and personal papers bearing petitioner's name, drug packaging paraphernalia, a blender with cocaine residue, and cocaine brick presses. The Federal Bureau of Investigation ("F.B.I.") fingerprinted the apartment and found only petitioner's finger prints. *406 The F.B.I. determined that the apartment had been rented by Lijuan Lawson. She told the F.B.I. that she had never used the apartment and that she turned it over to petitioner. During 1985 the retail price of a gram of cocaine in the district of Columbia was $ 100. The average cost of a kilo of cocaine to a distributor was $ 28,000 to $ 30,000. Pure cocaine is customarily "cut" or diluted before being packaged in one gram quantities for sale on the street. The minimum cut is one to one making a gram of cocaine sold on the street approximately 45-50 percent pure. Cocaine is frequently "cut" more than once. In January 1986 respondent made a termination assessment of $ 33,990,402 based on $ 68,000,000 in unreported income from the sale of narcotics. Respondent mailed his statutory notice of deficiency to petitioner on June 26, 1986. Petitioner maintained no books and records of his drug sales for 1985. In the statutory notice of deficiency respondent determined petitioner's income from the sale of cocaine in 1985 as follows:      Total kilograms sold per week after
being diluted one time with a customary
adulterant used to dilute or cut cocaine
(5 kilos X 2)
10   Number of weeks (before arrest) in 1985
40   Grams per kilogram
1,000   Street sales price of 1 gram
$ 100   Total sales in 1985: 10 kilos X 40 weeks
X 1000 grams X $ 100 equals
$ 40,000,000.00
Less cost of cocaine: A.   Cost of 1 kilo
$ 35,000.00
B.   Kilos purchased
per week
5
C.   Number of weeks in 1985
40
D.   Total cost of goods sold
in 1985: 5 kilos X 40 weeks
$  7,000,000.00
Net Income from narcotics in 1985
$ 33,000,000.00
*407 The revenue agent assumed that the cocaine sold by petitioner was cut only once before it was sold, that petitioner sold cocaine for 40 weeks in 1985 although there were actually 43 weeks prior to petitioner's arrest, and that the cost basis per kilo of cocaine to petitioner was $ 35,000 rather than $ 28,000 to $ 30,000. Each of these assumptions was conservative in petitioner's favor. OPINION The first issue we must decide is whether petitioner had unreported income of $ 33,000,000 in 1985 from the illegal sale of cocaine. Respondent's determination of deficiency is presumptively correct. Petitioner has the burden of proving respondent's determination erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. A showing by petitioner, however, that the statutory notice is arbitrary, excessive or without foundation shifts the burden of going forward with the evidence to respondent. Helvering v. Taylor,290 U.S. 507 (1935). Petitioner argues that the statutory notice of deficiency is arbitrary and excessive because petitioner's statement to Gonzales that he could move 20 kilos of cocaine a week cannot support a conclusion that he *408 received drug income in 1985. We have found that this statement was in fact made, and we do not believe, as petitioner argues, that it was mere puffery. The evidence shows that about 20 kilograms of cocaine were sold at Hanover Place each week in 1985 prior to petitioner's arrest. Respondent attributed gross income to petitioner from sales of 10 kilograms of cocaine per week. We found the testimony of all of respondent's witnesses to be persuasive and credible. Their testimony established petitioner's connection with the significant volume of drug trafficking occurring at Hanover Place. The results of the searches of petitioner's residence, safety deposit boxes, and apartment in Silver Spring, Maryland further connect petitioner with a large cocaine distribution operation. Respondent's determination of petitioner's cost basis for cocaine of $ 35,000 per kilo and his determination of a sales period of 40 weeks during 1985 were both reasonable and conservative in light of petitioner's lack of adequate books and records and his failure to file a return. In light of the overwhelming evidence linking petitioner to participation in illegal cocaine sales, we hold that the statutory *409 notice of deficiency is neither arbitrary nor excessive. The "naked assessment" cases cited by petitioner are inapplicable in this case because respondent has produced substantial evidence of petitioner's extensive activities in illegally selling cocaine. See Llorente v. Commissioner,649 F.2d 152 (2d Cir. 1981); Weimerskirch v. Commissioner,596 F.2d 358 (9th Cir. 1979); Carson v. United States,560 F.2d 693 (5th Cir. 1977); Gerardo v. Commissioner,552 F.2d 549 (3d Cir. 1977); Pizzarello v. United States,408 F.2d 579 (2d Cir. 1969); and DeCabalcante v. Commissioner,620 F.2d 23 (3d Cir. 1980). Aside from his improbable testimony that he was engaged in manufacturing jewelry, partial ownership of a service station, and contracting work, petitioner did not offer any proof to support his contention that he was not involved in drug trafficking during 1985. The evidence is overwhelmingly to the contrary. The cocaine found in the Silver Spring apartment which evidenced his fingerprints, the drug paraphernalia, cash, jewelry, debugging devices and search warrant found at petitioner's home are more than sufficient to connect petitioner with the distribution and sale of cocaine. The testimony *410 of Detective Gonzales was sufficient to tie petitioner to Hanover Place. Because petitioner has failed to file a return or keep adequate records and has unreported income from an illegal enterprize, respondent is authorized to determine the existence and amount of petitioner's income by any method that clearly reflects income. Section 446(b); Jackson v. Commissioner,73 T.C. 394 (1979); Harper v. Commissioner,54 T.C. 1121 (1970). Consequently, we hold that petitioner is liable for the deficiency as determined by respondent. Respondent has determined additions to petitioner's tax pursuant to sections 6651 (a)(1), 6653(a)(1), 6653(a)(2), 6654, and 6661. Except for an increase in the section 6651(a)(1) addition to tax, an increase in the section 6661 addition to tax, and for the section 6653(a)(2) addition to tax, which were raised by amended answer, petitioner has the burden of proving that the additions to tax were wrongly determined by respondent. Rule 142(a), Tax Court rules of Practice and Procedure.
Section 6651(a)(1) provides an addition to tax for failure to file a return at the rate of 5 percent of the amount of tax due per month up to 25 percent in the aggregate. On *411 November 30, 1987, petitioner stipulated that he had not filed a Federal income tax return for 1985. Petitioner did not request an extension of time for filing. Petitioner contends, however, that his being incarcerated at the Federal penitentiary in Leavenworth, Kansas, was reasonable cause for his failure to file within the meaning of section 6651(a)(1). Petitioner has not presented any evidence that he was denied access to whatever records he may have had, and has made no showing that he attempted in good faith to file a return in 1985. Petitioner concedes on brief that he was aware of his obligation to file a Federal income tax return and has stipulated that he filed a Federal income tax return in 1984 and did not for 1985. Consequently, petitioner is liable for the full amount of the addition to tax pursuant to section 6651(a) as requested in respondent's amended answer. Additionally, we hold petitioner liable for the addition to tax pursuant to section 6653(a)(1) and 6653(a)(2) for negligence or intentional disregard of rules and regulations. The burden of proving the portion of the deficiency attributable to negligence pursuant to section 6653(a)(2) is on the respondent *412 because this addition to tax was raised in his Second Amendment to Answer filed with leave of the Court on November 30, 1987. Petitioner did not keep any records of his illegal business dealings. Moreover, respondent has proven that petitioner actively sought to conceal his income from narcotics dealing by failing to keep books and records and by concealing assets through renting an apartment and safety deposit box in the names of other persons. Accordingly, we hold that all of the deficiency determined by respondent is due to negligence or intentional disregard of rules and regulations and the additions to tax pursuant to sections 6653(a)(1) and 6653 (a)(2) should be imposed. We also hold petitioner liable for the addition to tax pursuant to section 6654 in the amount of $ 2,507 as determined by respondent. Petitioner failed to present evidence on this issue. Finally, respondent in the statutory notice of deficiency determined additions to tax pursuant to section 6661 which was then imposed at the rate of 10 percent of the underpayment of tax attributable to petitioner's understatement of income, i.e., in this case, $ 1,649,040. Petitioner presented no evidence challenging *413 respondent's determination. The Omnibus Budget Reconciliation Act of 1986 increased the rate at which the addition to tax pursuant to section 6661 was imposed to 25 percent for additions to tax assessed after October 21, 1986. Pallotini v. Commissioner,90 T.C. 498 (1988). Respondent amended his answer to claim an increased addition to tax, but presented no evidence that the assessment, viz, $ 33,990,402 did not include the addition to tax pursuant to section 6661 on the deficiency determined, viz, $ 16,490,402. Consequently, on this record, respondent, who bears the burden of proof on the increased addition to tax, has failed to prove that the assessment of this addition to tax will be made after October 21, 1986. We sustain respondent's determination in the amount of $ 1,649,040. Decision will be entered for respondent.
Footnotes
1. All sections references are to the Internal Revenue Code of 1954 as in effect for the year in issue unless otherwise indicated. ↩
2. Although this amount appears to be the result of an error, the Commissioner admitted in his answer that this was the amount he had determined. The Commissioner did not seek to amend his answer to claim an increased addition to tax pursuant to section 6654↩.